# 1st National Bank of Birmingham
# v. Wilkesbarre Lace Mfg. Co.

*Assumpsit.*

(Decided June 10, 1909. 50 South. 153.)

1. *Carriers; Bill of Lading; Right Acquired by Purchase.*—A bill of lading is not commercial paper, and the transferee thereof merely acquires the title of the transferrer to the goods described therein.

2. *Vendor and Purchaser; Transfer of Bill of Lading.*—Pursuant to instructions from the buyer a seller of cotton shipped it to the buyer under a bill of lading in which the seller was named as shipper, and the bank as consignee, the bill stating that the buyer should be notified; the seller drew a draft on the buyer payable to the bank, and the bill of lading was attached to the draft, and deposited by the seller with the bank. The buyer paid the draft, and afterwards found that there was a discrepancy in the weight of the cotton de-.

[1st National Bank of Birmingham v. Wilkesbarre Lace Mfg. Co.]

scribed in the bill of lading. Held, the bank is not liable to the buyer for the discrepancy.

APPEAL from Birmingham City Court.

Heard before Hon. C. W. FERGUSON.

Action by the Wilkesbarre Lace Mfg. Co., against the 1st National Bank of Birmingham for the difference in the weight of cotton shipped under bill of lading payable to the bank. The facts are sufficiently stated in the opinion. There was judgment for the plaintiff and defendant appeals. Reversed and remanded.

CAMPBELL & JOHNSTON, PERCY & BENNERS, and GREGORY L. SMITH, for appellant.—Under the facts in this case the appellant did not buy a bill of lading. It merely advanced money upon the draft with bill of lading attached and undertook to collect the draft for the usual exchange as compensation. In order to make the bank liable for the contract of the seller, it must be shown that the bank purchased the property itself and that here the mere purchase of bill of exchange or draft and receiving the bill of lading and collateral security therefor does not make the bank the transferee of the contract or liable for a breach thereof.—*Euf. Groc. Co. v. Mo. Nat. Bk.,* 118 Ala. 408; *Haas & Co. v. Citizens' Bank of Dyersburg,* 144 Ala. 569; *Bank of Guntersville v. Jones Cot. Co.,* 46 South. 971. The well settled rule is that where a bank discounts a draft by the seller upon the purchaser, with bill of lading attached endorsed in blank, it does not become the assignee of the contract and is not liable for a breach thereof.—*Robinson v. Reynolds,* 2 Q. B. 196; *Craig v. Sibbett,* 15 Pa. 238; *1st Nat. Bank v. Burkham,* 32 Mich. 328. The delivery of the bill of lading in the absence of statutory provisions merely operates as a delivery of the property actually shipped under it. There is no other property to which

the bill of lading is applicable, and in the absence of a statute, a carrier is not liable for property purporting to have been shipped, but in fact, not shipped.—*Jasper T. Co. v. K. C. M. & B. R. R. Co.*, 99 Ala. 421; *A. G. S. R. R. Co. v. Commonwealth Cot. Co.*, 146 Ala. 398. The delivery of an endorsed bill of lading is the mere symbolical delivery of the property and has no more effect upon the property than would the delivery of the property itself. Or where less property than that recited in the bill is shipped, the bank does not acquire possession of the whole property mentioned in the bill of lading and no presumption can arise that it assumes the performance of the seller's contract by delivering that which it does not acquire.—*Moore v. Robinson*, 82 Ala. 537; *Robinson v. Fogee*, 86 Ala. 257; *L. & N. R. R. Co. v. Hallgood*, 113 Ala. 163. VanLeer & Co., could not maintain the action either as a matter of law or right.—*Hoffman & Co. v. Bank of Milwaukee*, 12 Wall. 181; *Goetz v. Bank of Kansas City*, 119 U. S. 551; *Marine Bank v. Wright*, 48 N. Y. 3; *Bank of Rochester v. Jones*, 55 Am. Dec. 299 and note; 14 A. & E. Ency. of Law; 198; *Willard Mfg. Co. v. Tirney*, 133 N. C. 630; *Young v. Lehman*, 63 Ala. 558; *Hunt v. Johnson*, 96 Ala. 130; *Slaughter's case*, 109 Ala. 157; *Leonhardt v. Small*, 96 S. W. 1051. For the same reasons the Wilkesbarre Co. cannot maintain the action. In any event if the contract alleged is held to mean a sale of cotton or a guarantee of the sale, it is ultra vires the bank.—*Nat. Bank v. Kennedy*, 167 U. S. 362; *Central Trans. Co. v. Pullman Co.*, 139 U. S. 559; *Marion Sav. Bank v. Duncan*, 54 Ala. 471; *Sherwood v. Alvis*, 83 Ala. 117; *Chiwacla L. Wks. v. Dismukes*, 87 Ala. 242.

CABANISS & BOWIE, for appellee.—If regard is to be had to the doctrine of state decisis, the judgment ap-

pealed from must be affirmed on the authority of *Haas & Co. v. Citizens' Bank of Dyersburg,* 144 Ala. 552; s. c. 46 South. 1036. Counsel then proceeds to discuss the two cases to demonstrate that there is no substantial difference. They insist that reference in the draft to the bill of lading differentiates the present case from many if not all the cases cited in appellant's brief. Replying to the asserted ultra vires of the transaction the contention is that the complaint contains the common count, and that if the defendant undertook to carry out the contract made by Smith & Coughlan, and failed to do so, it had received money which ex aequo et bono belonged to the plaintiff and which it will not be allowed to retain.—*Nat Bank v. Townsend,* 139 U. S. 69. This case has been cited and approved in many cases.— *McCormick v. Nat. Bank,* 165 U. S. 553; 171 U. S. 161; 55 Am. St. Rep. 337; 44 Am. St. Rep. 357.

SIMPSON, J.—This suit was brought by the appellee against the appellant, and the facts as agreed upon are: That John H. Coughlan, under the firm name of Smith & Coughlan, who is a cotton broker in Birmingham, had sold 100 bales of cotton to Van Leer & Co., cotton brokers in Philadelphia, and in accordance with instructions from said Van Leer & Co. shipped the cotton under a bill of lading in which said Van Leer & Co. were named as the shippers and W. W. Crawford, who is the cashier of the defendant, was named as the consignee, stating, "Notify Van Leer & Company, Consignee, address, Philadelphia, as information only, and not for purposes of delivery;" the destination of the cotton being Wilkesbarre, Pa. Thereupon Coughlan drew a draft on Van Leer & Co., to the order of W. W. Crawford, cashier, for the amount of the purchase price, sent the invoice to Van Leer & Co., and deposited the draft, with bill of

lading attached, with the defendant bank, "with other items and subject to payment; the said defendant crediting the said Smith & Coughlan with the sum of $4,-615.61, the face of the draft, less the exchange charges at $1.50 per 100. The said Smith & Coughlan were customers and depositors in the defendant bank at Birmingham, Ala., and frequently deposited drafts, with bills of lading attached; the defendant charging back to Smith & Coughlan the amount of the face value of any drafts which were not paid." Said draft, with the bill of lading attached, was sent by the defendant bank to its correspondent, the Fourth Street National Bank of Philadelphia, for collection. Said Van Leer & Co. paid the draft, and received the bill of lading. Said Van Leer & Co. sold the 100 bales of cotton to the plaintiff, drawing a draft upon it, with the bill of lading attached. When the cotton arrived and was delivered to the plaintiff, it was ascertained that there was a deficiency of 24,-799 pounds. Several other shipments, which took the same course, are detailed in the agreement, which proved, likewise, to be deficient in weight. Said Van Leer & Co. assigned to the plaintiff "any and all claims and demands and actions of every kind and nature whatsoever which we (they) now have or had at any time, against the First National Bank of Birmingham, Ala., growing out of a certain transaction, or transactions, between us and Smith & Coughlan, of Birmingham, Ala., in and by which the said Smith & Coughlan drew certain drafts on us * * * for the purchase price of certain bales of cotton, agreed to be sold to us, specified in said drafts, which said drafts, with bills of lading attached, were sold to or discounted by the First National Bank of Birmingham."

It was shown: That the plaintiff knew nothing about the transactions between Van Leer & Co. and Smith &

Coughlan; also, that the defendant knew nothing about their transactions, nor about what cotton was shipped at any time, except that it had instructions from Van Leer & Co. to have the bills of lading made out as they were when Smith & Coughlan shipped cotton to them. The contention of the plaintiff, which was sustained by the court in rendering judgment for the plaintiff, is that the defendant is liable under two cases heretofore decided by this court, and hereinafter referred to.

In *Eufaula Grocery Company v. Mo. Nat. Bank,* 118 Ala. 408, 24 South. 389, the Eufaula Grocery Company purchased a car load of hay from J. A. B. & Co., of Missouri, who shipped a car load of hay to said grocery company at Eufaula, Ala., and drew on it for the price of the hay with bill of lading attached; the money to be paid "on arrival of the car of hay," and said draft being payable to R. D. C., cashier (he being the cashier of the Missouri National Bank, the defendant in the action). Said Missouri Bank sent the draft, with the bill of lading attached, to the Eufaula National Bank for collection. The grocery company paid the draft, on receipt of the car load, but, on finding the hay to be "decayed and unmerchantable," commenced suit against the Missouri Bank for the money, while it was still in the hands of the Eufaula Bank. The court says that: "At the time this suit was brought, the money in question was not to be regarded as being in the hands of the Missouri Bank, so far as the rights of J. A. B. & Co., in reference thereto, were concerned." This court held that, as there was nothing on the draft to indicate that any one other than the Missouri Bank had any interest in it, and it was sent to the Eufaula Bank for collection for its own account, the grocery company had a right to consider it as the property of the Missouri Bank, and, as said Missouri Bank had placed itself in that position towards the

grocery company, it could not be heard to say that it was not the owner of the draft, when by reason of some equity the plaintiff becomes entitled to reclaim the money. The court concludes that this was money paid in mistake of fact, and therefore recoverable as money equitably belonging to plaintiff.

In the case of *Haas & Co. v. Citizens' Bank of Dyersburg*, 144 Ala. 562, 570, 571, 572, 39 South. 129, 130, 131, 1 L. R. A. (N. S.) 242, 113 Am. St. Rep. 61, Klyce had sold to plaintiff a quantity of meal, drew a draft on plaintiff with bill of lading attached, payable to the defendant, "and then and there sold and delivered said draft, bill of lading, and account to the defendant" (as alleged in the complaint). The decision is based upon the principle that the defendant, by purchasing the draft and the account and bill of lading, took the place of Klyce and became thereby bound to deliver the goods, just as Klyce was bound. The court, in its opinion, says: "By no rule of construction can the averments of the complaint justify the conclusion that the bill of lading was held by the defendant as collateral security for the draft, or that the defendant was merely Klyce's agent for its collection." The court also adverts to the principle that: "Assignments of bills of lading are not governed by the commercial law. The transferee simply acquires the title to the transferrer to the goods described in them." The court also says: "The draft was drawn to the defendant's order, accompanied by the bill of lading and the account, each of which was sold to it. The draft had not been accepted by the plaintiffs before its negotiation to defendant, and until accepted, in the absence of some fact tending to show that defendant was induced by the conduct of the plaintiffs to purchase it, they were not bound by it. When it was paid, the purchase price to be paid for the goods, as well as the

goods themselves, belonging to the defendant. The plaintiffs were not parties to the transaction, by which it acquired the ownership of the goods and the right to receive payment for them."

In the case now under consideration, the plaintiff sues as the assignee of Van Leer & Co., and, as stated in the Haas & Co. Case, the bill of lading not being commercial paper, "the transferee simply acquires the title of the transferrer to the goods described. Then what were the rights of Van Leer & Co.? It could not be said, as in the *Eufaula Grocery Co. Case*, that said Van Leer & Co. had a right to consider it the property of the defendant company, because they had constituted Smith & Coughlan their agents to have the bill of lading made out in their name as shippers, for certain purposes, fully understood by them, and it was, in fact, their bill of lading, made payable to the cashier of the bank, by their own procurement, and with their full knowledge as to who the real shipper was. For the same reason, and because there is no pretense that the defendant was the purchaser of the claim and of the bill of lading, the Haas Case does not apply. The defendant never assumed any obligation with regard to the quantity of the cotton shipped under the bill of lading, nor has it placed itself in any position whereby Van Leer & Co. had any right to look to it for the guaranty of the quantity of said cotton.

These points were presented in various ways, by demurrers to complaint, pleas, and demurrers thereto, and by objection to evidence; but the entire contention is involved in the judgment of the court, and the exception thereto embodied in the twenty-sixth assignment of error, and it is not necessary to particularly consider the others.

The court erred in rendering judgment for the plaintiff.

[Pollack v. Gunter & Gunter.]

The judgment of the court is reversed, and a judgment will be here rendered in favor of the defendant.

Reversed and rendered.

DOWDELL, C. J., and DENSON and MAYFIELD, JJ., concur.

DOWDELL, C. J., while concurring in this conclusion, desires to emphasize the fact that he does not acknowledge the correctness of the case of Haas v. Citizens' Bank of Dyersburg.